# EXHIBIT 1

ER

## COMMONWEALTH OF MASSACHUSETTS
## SUPERIOR COURT DEPARTMENT

SUFFOLK, SS.                                                                CASE NO.

---

STEVEN C. FUSTOLO AND STEVEN C. FUSTOLO, TRUSTEE OF THE SALEM STREET ESTATE PLANNING TRUST

*Plaintiffs*

v.

NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING AND U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR VRMTG ASSET TRUST

*Defendants*

**VERIFIED COMPLAINT**

**Jury Trial Demanded**

## NATURE OF THE CASE

1. This is an action brought by Steven C. Fustolo, owner of a condominium in Boston's North End, against his mortgage servicer, Newrez LLC, and the purported holder of an assignment of his mortgage, U.S. Bank Trust National Association. The foreclosure of the property at issue is scheduled for April 22, 2025 at 12:00 p.m., but the foreclosure is improper as stated in the claims brought herein, which are for the following: 1) a declaratory judgment that a lis pendens from a prior action between the parties is legally effective and is an encumbrance on title to the property; 2) violation of a mortgagee's duty to foreclose in good faith and with reasonable diligence so as to obtain as high as possible a price for a foreclosing property; 3) the tort of wrongful foreclosure; and 4) unfair business practices in violation of G.L. c. 93A.

## PARTIES

2. Plaintiff, Steven C. Fustolo is a natural person residing in Massachusetts, and is the owner of the subject property located at 115 Salem Street, Unit 11, Boston, Suffolk County, Massachusetts 02113 (the "Property").

3. On or about April 5, 2025, Fustolo transferred the property to the Salem Street Estate Planning Trust ("Trust"). The trustees of the Trust are Fustolo and Debra Ann Cichon-Fustolo. A quitclaim deed and trustee's certificate were submitted to the Suffolk Registry of

1

Deeds for recording on or about April 21, 2025. Fustolo, individually and as Trustee of the Trust, are referred to herein as "Fustolo."

4. Newrez LLC d/b/a Shellpoint Mortgage Servicing ("Newrez") is a Delaware limited liability company with principal offices located at 1100 Virginia Drive, Fort Washington, Pennsylvania 19034. Newrez is the servicer of the mortgage on the Property.

5. U.S. Bank Trust National Association, Not In Its Individual Capacity But Solely as Owner Trustee for VRMTG Asset Trust ("VRMTG") is a nationally chartered bank with principal offices located at 300 East Delaware Avenue, 8th Floor, Wilmington, Delaware 19809. VRMTG alleges that it is the holder by assignment of the mortgage on the Property.

## JURISDICTION AND VENUE

6. The Court has jurisdiction over the Defendants in this action because the Defendants transact business in the Commonwealth, have caused injury in the Commonwealth as described herein, and because they purport to have an interest in real property in the Commonwealth or to be acting on behalf of a person with such an interest.

7. Venue is proper in this Court because the subject property is located in Boston, Suffolk County, Massachusetts.

## COMMON FACTS

8. On or about July 19, 2023, Fustolo filed a Verified Complaint against Defendants Newrez and U.S. Bank in Suffolk Superior Court, case number 2384CV01651, which was subsequently removed by those Defendants to the U.S. District Court for the District of Massachusetts and was assigned case number 1:23-cv-11972-MJJ (the "Earlier Action").

9. In the Earlier Action, Fustolo challenged those Defendants' actions with respect to their right to foreclose on his property, a condo located at 115 Salem Street, Unit 11, Boston, Massachusetts (the "Property") (Count I), violating the federal Fair Debt Collection Practices Act, 15 U.S.C. §§ 1692, et seq. (Count II), unfair business practices under G.L. c. 93A (Count III), Defamation (Count IV), and slander to title (Count V).

10. The parties proceeded through discovery in the Earlier Action and filed their respective cross-motions for summary judgment under Rule 56.

11. While the parties were awaiting a decision on their summary judgment motions, Defendants scheduled a foreclosure of the Property for August 11, 2024.

12. Fustolo filed an Emergency Motion for a Memorandum of Lis Pendens in order to notify potential purchasers of the foreclosing Property of the title issues raised in the Verified Complaint.

13. On July 23, 2024, the federal court (Joun, J.) in the Earlier Action granted

2

Fustolo's motion and endorsed a Memorandum of Lis Pendens.

14. Fustolo subsequently recorded the Memorandum of Lis Pendens in the Suffolk Registry of Deeds, Book 70417, Page 265.

15. Defendants postponed the foreclosure sale after the Memorandum of Lis Pendens had been granted and recorded.

16. Finally, on January 6, 2025, the federal court granted Defendants' Motion for Summary Judgment, dismissing the Earlier Action.

17. Fustolo timely appealed the decision to the First Circuit Court of Appeals, case number 25-1118, filing a Notice of Appeal on February 5, 2025. The case remains pending with that court.

18. Then, on March 12, 2025, another notice of foreclosure was sent to Fustolo by Defendants, scheduling the auction to be conducted at 12:00 p.m. on April 22, 2025.

## A. The Incorrectly-Dissolved Memorandum of Lis Pendens.

19. On February 28, 2025, Defendants recorded the Order of Dismissal from the Earlier Action in the Registry of Deeds. Defendants contend that this dissolved the Memorandum of Lis Pendens as a matter of law, making it of no further legal effect. (As explained further below, this was improper under the lis pendens statute, G.L. c. 184, § 15(d).)

20. Notwithstanding the fact that the Memorandum of Lis Pendens was not properly dissolved, and wanting to ensure that Defendants' actions did not muddy the title, Fustolo filed a clarifying affidavit in the Registry of Deeds pursuant to G.L. c. 183, § 5B (the "5B Affidavit") in which he stated that the Earlier Action had been appealed to the First Circuit Court of Appeals and provided the case number to that pending appeal.

21. The lis pendens statute, G.L. c. 184, § 15, authorized the recording of a lis pendens in the Registry of Deeds as has already been done via the District Court's Order of July 23, 2024. Of this there is no dispute. However, contrary to Defendants' stated position, they have failed to dissolve the lis pendens, and it remains as part of the chain of title.

22. The Order of Dismissal, although recorded by Defendants, is not valid to dissolve the lis pendens. The reason for this is that under G.L. c. 184, § 15(d), the recording of a judgment only dissolves a lis pendens if it is filed after the appeal deadline, and, critically, filed with documentation that the case was not appealed. Such is not the case here. Rather, here, the Order of Dismissal was filed *after* the notice of appeal was filed, and the recorded lis pendens *does not contain the requisite proof that no appeal was filed* – nor could it, because an appeal was in fact filed.

23. Specifically, G.L. c. 184, § 15(d) states that the recording of the Order of Dismissal is only effective to dissolve the lis pendens if documentation that there was no "timely appeal

3

therefrom being filed" is recorded along with the Order of Dismissal.[1] As the Land Court's title examination guidelines[2] further explain, this means that a clerk's certificate or other evidence of the "absence of a timely appeal" must be filed along with the Order of Dismissal. The relevant section of the Land Court guidelines states as follows:

> The memorandum of lis pendens may be dissolved by ... [t]he filing of an attested copy of an allowed special motion to dismiss, or of any order or judgment dismissing, the underlying action, or of an order dissolving the memorandum of lis pendens, in each such case without a timely appeal having been filed (or, if an appeal had been filed, by final resolution of all appeals upholding the allowance, order or judgment). A clerk's certificate from the trial court will be necessary to establish the absence of a timely appeal or the favorable resolution of any appeal, and should be registered along with the attested copy of the allowance, order, or judgment; ....

*Id.*

24. Here, the lis pendens was granted on, and recorded on, July 23, 2024. The Earlier Action was dismissed on January 6, 2025, and Fustolo timely appealed on February 5, 2025. The Defendants recorded the Order of Dismissal on February 28, 2025, but this was *after an appeal had already been filed* and therefore violated the requirement that proof no appeal was filed be provided to the Registry of Deeds. Accordingly, the Defendants did not dissolve the lis pendens and it remains a valid encumbrance on the title to the property. Defendants, however, take the contrary position.

## B.    Foreclosure of the Property for Less Than Its Actual Value.

25. On information and belief, Fustolo contends that Defendants' estimate of the Property's value may be, and likely is, far lower than its fair market value, even in a foreclosure sale. The market value of the property is as much as $589,000.00, pursuant to Fustolo's opinion of the value thereof. *See* Mass. Guide to Evid. § 701; *Menici v. Orton Crane & Shovel Co.*, 285 Mass. 499, 503 (1934) ("an owner of property is actually familiar with its characteristics, has some acquaintance with its uses actual and potential and has had experience in dealing with it. It is this familiarity, knowledge and experience ... which qualify him to testify as to its value.").

---

[1] The relevant portion of G.L. c. 184, § 15(d) states as follows:

> The recording of an attested copy of the order or judgment or of the order of dissolution, in either case without a timely appeal therefrom being filed, or of a judgment dismissing the appeal, or the recording of a voluntary dismissal of the memorandum of lis pendens as provided in subsection (a), shall be conclusive evidence that the action or proceeding which was the subject of the memorandum of lis pendens does not affect the title to the real property or the use and occupation thereof or the buildings thereon.

[2] Land Court Guidelines on Registered Land, § 34, available at https://www.mass.gov/doc/land-court-rules-and-standing-orders/download (accessed April 13, 2025).

4

26. However, on information and belief, Defendants are using a significantly lower value for the Property. Defendants' undervaluation of the Property is detrimental to Fustolo's interests as mortgagor because the Property is likely to be sold for much less than its actual value. Fustolo owns other condominiums in the same building, and has repeatedly encountered an issue wherein lenders' valuation models undervalue the units. He has repeatedly encountered this issue with other lenders.

27. Defendants may claim that the disparity in values is irrelevant, but this would not be accurate, because the harm to Fustolo from this is real and discrete. If the Property is allowed to sell for significantly less than it is worth, Defendants are exposing Fustolo to the possibility of a deficiency judgment. That is, selling the Property for a fire-sale value will not pay off the debt, and Defendants, compounding the injury, can turn around and initiate legal proceedings against Fustolo in a judicial forum.

28. Defendants have a responsibility to maximize fair value of the property in foreclosure. the mortgagee's duty is to "get for the property as much as it can reasonably be made to bring ... [and] do what a reasonable [person] would be expected to do to accomplish that result." *Clark v. Simmons*, 150 Mass. 357, 360, 34 N.E. 108 (1890). Yet, the defendant moving forward with a foreclosure knowing there is a defect in title based on an active lis pendens in effect and a pending appeal, invites below-market bids to the detriment of Fustolo. Any prospective bidder at the scheduled auction would certainly take into account recorded information of clouded title from the lis pendens, the plaintiff's affidavit, and defects that the subject of the pending appeal.

## C. No New Servicemembers Civil Relief Act Complaint Has Been Filed Against Fustolo or Co-Trustee Debra Ann Cichon-Fustolo to Ensure Clear Title.

29. The Servicememembers Civil Relief Act ("SCRA") protects active-duty military members from collection and foreclosure during their service. 50 U.S.C. §§ 3901-4043; St. 1943, c. 57 (1943), as amended through St. 1998, c. 142 (Massachusetts procedure).

30. The SCRA prohibits foreclosure for up to a year after exiting military service. 50 U.S.C. 3953(c) ("A sale, foreclosure, or seizure of property for a breach of an obligation ... shall not be valid if made during, or within one year after, the period of the servicemember's military service ....").

31. An SCRA judgment is good for one year, or sometimes up to two, as explained in the leading Massachusetts real estate treatise since 1883, Crocker's Notes on Common Forms:

> Generally, the [SCRA] judgment is good for one year on its face and for two years absent a significant change in circumstances (i.e., cure of the default or change of the parties and their military status).

Crocker's Notes on Common Forms § 585 (2020 ed.).

32. Although a foreclosing mortgagee is not legally required to obtain a SCRA

5

judgment, the fact is that this is done in virtually every foreclosure sale because without the SCRA judgment, title is defective. The Massachusetts Real Estate Bar Association ("REBA") Title Standard 7 states that failure to comply with the SCRA states that title is unmarketable until

> at least twenty years has elapsed since the recording of a certificate of entry pursuant to G.L. c. 244, § 2 or the mortgagee's affidavit required by G.L. c. 244, § 15 or § 2; and the record does not disclose any adverse claim of ownership during said twenty-year period.

REBA Title Standard 7.

33. Here, however, it was approximately two (2) years ago that the most recent SCRA Complaint was filed by Defendants against Fustolo. The case Defendants filed was in Land Court case number 23SM001761, filed on April 25, 2023.

34. Furthermore, as stated *supra*, the Property has been conveyed to the Trust for Fustolo's estate plan, which has two trustees, Fustolo and Debra Ann Cichon-Fustolo ("Cichon"). Notably, *no SCRA complaint has been filed as to co-trustee Cichon.*

35. Accordingly, with respect to Fustolo, if a reasonable and diligent potential buyer at the foreclosure were to review Land Court records to ensure that the SCRA had been complied with, the buyer would see that there was no guarantee the SCRA might not allow invalidation of the foreclosure, thereby chilling the sale and any offers made at the sale.

## COUNT I:
## Declaratory Judgment

36. The preceding allegations are hereby incorporated by reference.

37. The Superior Court may grant declaratory relief under the Declaratory Judgments Act, G.L. c. 231A, §§ 1, *et seq.* This includes the Court's right to "make binding declarations of right, duty, status and other legal relations sought thereby, either before or after a breach or violation thereof has occurred in any case in which an actual controversy has arisen ...." G.L. c. 231A, § 1.

38. Massachusetts is a non-judicial foreclosure state allowing a mortgagee to foreclose under a general power of sale. G.L. c. 244, §§ 11-17C. To challenge the right of a purported mortgagee to foreclose, a homeowner may file an affirmative action under the declaratory judgment statute. G.L. c. 231A, § 1.

39. In this matter, there are five (5) genuine issues of material dispute between Fustolo and the Defendants, as described herein. Those issues include, without limitation:

   a) The controversy over whether the Defendants' recording of the Order of Dismissal from the Earlier Action in the Suffolk Registry of Deeds is sufficient to release the Memorandum of Lis Pendens;

b) The controversy over whether the Memorandum of Lis Pendens, as recorded in the Suffolk Registry of Deeds, is presently an encumbrance on the title to the Property;

c) The controversy over whether Defendants' actions violated the mortgagee's duty of good faith and reasonable diligence, as such duty has been enunciated under Massachusetts common law;

d) The controversy over whether Defendants' actions constitute the tort of wrongful foreclosure; and

e) The controversy over whether Defendants' actions constitute violation of the Massachusetts Unfair and Deceptive Trade Practices Act, G.L. c. 93A.

40. Fustolo has suffered damages from Defendants' foregoing actions, including but not limited to an invasion of privacy, damage to his professional reputation as a CPA, loss of equity in the Property, costs and attorney's fees, and other harm.

## COUNT II:
## Violation of Mortgagee's Duty of Good Faith and Reasonable Diligence

41. The preceding allegations are hereby incorporated by reference.

42. Attempting to foreclose in violation of the mortgagee's duty to conduct the foreclosure sale in good faith and with reasonable diligence, as is required under Massachusetts law. "[A]n action of tort will lie where the foreclosure was based upon an actual default but was conducted negligently or in bad faith to the detriment of the mortgagor ...." *Levin v. Reliance Co-operative Bank*, 301 Mass. 101, 103, 16 N.E.2d 88, 89 (1938). As held by the Supreme Judicial Court, it "has become elementary by repeated decisions that a mortgagee attempting to execute a power of sale contained in a mortgage must exercise good faith and use reasonable diligence to protect the interests of the mortgagor or of the one holding the title to the equity of redemption." *Krassin v. Moskowitz*, 275 Mass. 80, 82 (1931).

43. The interests of the mortgagor must be given great consideration when conducting a foreclosure sale. The duty to exercise good faith and reasonable diligence is not met by "a mere literal compliance with the terms of the power [of sale]" or with the requirements of G.L. c. 244, § 14. *Prop. Acquisition Grp., LLC v. Ivester*, 95 Mass. App. Ct. 170, 175, 122 N.E.3d 10, 16 (2019), quoting *Cambridge Sav. Bank v. Cronin*, 289 Mass. 379, 382, 194 N.E. 289 (1935).

44. Rather, the mortgagee's duty is to "get for the property as much as it can reasonably be made to bring ... [and] do what a reasonable [person] would be expected to do to accomplish that result." *Clark v. Simmons*, 150 Mass. 357, 360, 34 N.E. 108 (1890). The mortgagee must therefore "get for the property as much as it can reasonably be made to bring ... [and] do what a reasonable [person] would be expected to do to accomplish that result." *Id. See Williams v. Resolution GGF Oy*, 417 Mass. 377, 383, 630 N.E.2d 581 (1994). Failure to do so "is evidence that good faith was not used to obtain the best reasonable possible price." *Sandler v. Silk*, 292 Mass. 493, 497, 198 N.E. 749, 751 (1935).

7

45. Black letter law holds that it is a violation of the duty of good faith and reasonable diligence if a mortgagee sells real property "without having made any effort to determine whether the price for which she sold was reasonable, or was the fair market value, or whether she could get more." *Ivester*, 95 Mass. App. Ct. at 176, quoting *Price v. Bassett*, 168 Mass. 598, 601, 47 N.E. 243 (1897). It is therefore "imperative that the foreclosing mortgagee know or ensure that efforts are taken to ascertain the value of the property prior to sale in order to protect the interests of the mortgagor." *Ivester*, 95 Mass. App. Ct. at 176.

46. Compliance with this duty is especially important because non-judicial foreclosure contains none of the due-process protections that a judicially supervised foreclosure process would ensure. Accordingly, because "the power of sale is a substantial power that permits a mortgagee to foreclose without judicial oversight," it must be "exercised with careful regard to the interests of the mortgagor" (quotations and citations omitted). *Federal Nat'l Mtg. Ass'n v. Marroquin*, 477 Mass. 82, 86 (2017). This careful regard to the mortgagor's interests includes many considerations, the most importance of which is the mortgagee's strict compliance with the obligation to obtain as high a price as possible for the property.

47. Here, Defendants have violated the duty of good faith and reasonable diligence by conducting the sale in a manner that will inexorably chill the sale, chill the sale price, and deter potential bidders. This will harm Fustolo in that he will receive less than a reasonable amount for the Property at the foreclosure.

48. Defendants' actions in violation of its duty are explained in Sections A, B, and C of the Common Facts, *supra*, and include the following:

   a) Defendants' attempt to conduct the foreclosure sale with the invalid recording of the Order of Dismissal while a valid Memorandum of Lis Pendens remains in place;

   b) Defendants' undervaluation of the Property. This will further encourage potential bidders to offer amounts far less than the Property is worth;

   c) Defendants' failure to obtain a new SCRA judgment. As explained above, the SCRA judgment is only valid for one year, or perhaps up to two, but here the last SCRA complaint was filed against Fustolo nearly two years ago.

   d) Furthermore, Defendants have not obtained a SCRA judgment as to co-trustee Cichon.

49. Just one of the above issues in isolation may or may not be sufficient to be determinative of whether foreclosing mortgagees like Defendants are in violation of their duty of good faith and reasonable diligence. However, the combination of these three critical factors is clearly sufficient to show that Defendants did not attempt to "get for the property as much as it can reasonably be made to bring ... [and] do what a reasonable man would be expected to do to accomplish that result." *Clark v. Simmons*, 150 Mass. at 360.

50. Fustolo has suffered damages from Defendants' foregoing actions, including but

8

not limited to an invasion of privacy, damage to his professional reputation as a CPA, loss of equity in the Property, costs and attorney's fees, and other harm.

## COUNT III:
## Wrongful Foreclosure

51. The preceding allegations are hereby incorporated by reference.

52. "Massachusetts law provides for a tort of 'wrongful foreclosure.'" *Wenzel v. Sand Canyon Corp.*, 841 F. Supp. 2d 463, 485 n. 25 (citing *Levin v. Reliance Co-Operative Bank*, 301 Mass. 101, 103 (1938)). *See also Sandler v. Silk*, 292 Mass. 493, 198 N.E. 749 (1935); *Ford v. Lehman Capital*, No. 10-40092-FDS, 2012 U.S. Dist. LEXIS 53551 (D. Mass. Apr. 17, 2012). As to such a claim, "evidence of motive is irrelevant...." *Kattar v. Demoulas*, 422 Mass. 1, 12 (2000).

53. Here, Defendants have committed, and are in the process of committing, a wrongful and tortious foreclosure of Fustolo's Property. The basis for these allegations is stated above and is hereby incorporated by reference.

54. Fustolo has suffered damages from Defendants' foregoing actions, including but not limited to an invasion of privacy, damage to his professional reputation as a CPA, loss of equity in the Property, costs and attorney's fees, and other harm.

## COUNT IV:
## Unfair Business Practices in Violation of G.L. c. 93A

55. The preceding allegations are hereby incorporated by reference.

56. Defendants are engaged in trade or commerce in Massachusetts by, among other things, owning real estate within the Commonwealth, servicing mortgages within the Commonwealth, filing court actions within the Commonwealth, sending collection and demand letters within the Commonwealth, and conducting foreclosures and evictions within the Commonwealth, and activities related thereto.

57. Defendants committed unfair and deceptive acts and practices with respect to Fustolo, as described above and as incorporated by reference.

58. Fustolo has suffered damages from Defendants' foregoing actions, including but not limited to an invasion of privacy, damage to his professional reputation as a CPA, loss of equity in the Property, costs and attorney's fees, and other harm.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Steven C. Fustolo demands judgment in his favor and against Defendants on all Counts of this Verified Complaint, a declaratory judgment in his favor on each of the issues stated above, plus costs, interest, and attorney's fees, as well as such other relief as may be provided in law or in equity.

## JURY TRIAL DEMAND

Plaintiff hereby demand a trial by jury on all issues so triable.

Respectfully submitted,

Plaintiff,
Steven C. Fustolo,
By counsel,

*/s/ Joe Dye Culik*
Joe Dye Culik (BBO #672665)
DYE CULIK PC
1200 E. Morehead St., Suite 260
Charlotte, NC 28204
(980) 999-3557
(980) 999-3537 (Fax)
jdc@dyeculik.com

April 22, 2025

10

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT DEPARTMENT

SUFFOLK, SS.                                                                                  CASE NO.

---

STEVEN C. FUSTOLO

    *Plaintiff*

v.

NEWREZ LLC DBA SHELLPOINT
MORTGAGE SERVICING AND
U.S. BANK TRUST NATIONAL
ASSOCIATION, NOT IN ITS INDIVIDUAL
CAPACITY BUT SOLELY AS OWNER
TRUSTEE FOR VRMTG ASSET TRUST

    *Defendants*

**VERIFICATION OF COMPLAINT**

---

I, Steven C. Fustolo, depose and state that I am the plaintiff in this action, that I have read the foregoing Complaint, that no material facts have been omitted therefrom, and that the facts stated in it are true and correct based on my personal knowledge except as to matters therein stated to be alleged on information and belief and as to those matters I believe them to be true.

_____
Steven C. Fustolo

11