**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

**STEVEN C. FUSTOLO, and STEVEN C. FUSTOLO, as Trustee of the Salem Street Estate Planning Trust,**

**Plaintiffs,**

**v.**

**NEWREZ LLC dba SHELLPOINT MORTGAGE SERVICING and U.S. BANK TRUST NATIONAL ASSOCIATION, not in its individual capacity but solely as Owner Trustee for VRMTG Asset Trust, LANDMARK AUCTION CO., LLC, MATTHEW J. KATZ and JPMORGAN CHASE BAND, N.A.,**

**Defendants.**

**Case No. 25-cv-11091-DJC**

**MEMORANDUM AND ORDER**

**CASPER, C.J.** **November 24, 2026**

## I. Introduction

Plaintiff Steven C. Fustolo, individually and as trustee of the Salem Street Estate Planning Trust ("Fustolo"), has filed this action against Defendants Newrez LLC d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), U.S. Bank Trust National Association, as owner trustee for VRMTG Asset Trust ("U.S. Bank"), Landmark Auction Co., LLC ("Landmark"), Matthew J. Katz ("Katz") and JPMorgan Chase Bank, N.A. ("Chase") to challenge the foreclosure sale and resulting assignment of property located at 115 Salem Street, Unit 11, Boston, Massachusetts, 02113 ("the

Property"). D. 11. As to Shellpoint and U.S. Bank, Fustolo seeks declaratory judgment under Mass. Gen. L. c. 23A, §§ 1, *et seq.* ("Count I"), and alleges a violation of the mortgagee's duty of good faith and reasonable diligence ("Count II"), wrongful foreclosure ("Count III") and unfair business practices under Mass. Gen. L. c. 93A ("Chapter 93A") ("Count IV"). Id. As to Chase, Fustolo seeks declaratory judgment under Mass. Gen. L. c. 231A, § 1 ("Count V"). Id. Shellpoint, U.S. Bank and Chase (collectively, "Defendants") now move for judgment on the pleadings under Fed. R. Civ. P. 12(c). D. 56. For the reasons stated below, the Court ALLOWS the motion, id., as to all claims.

## II. Standard of Review

Rule 12(c) allows a party to move for judgment on the pleadings at any time "[a]fter the pleadings are closed—but early enough not to delay trial." Fed. R. Civ. P. 12(c). A motion for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c) is "ordinarily accorded much the same treatment" as a Rule 12(b)(6) motion. Aponte-Torres v. Univ. of P.R., 445 F.3d 50, 54 (1st Cir. 2006) (citations omitted). To survive a motion for judgment on the pleadings, therefore, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). Because a motion for judgment on the pleadings "calls for an assessment of the merits of the case at an embryonic stage," the Court "view[s] the facts contained in the pleadings in the light most favorable to the nonmovant and draw[s] all reasonable inferences therefrom" in his or her favor. Pérez-Acevedo v. Rivero-Cubano, 520 F.3d 26, 29 (1st Cir. 2008) (internal quotation marks omitted) (quoting R.G. Fin. Corp. v. Vergara-Nuñez, 446 F.3d 178, 182 (1st Cir. 2006)).

On a Rule 12(c) motion, unlike a Rule 12(b) motion, the Court considers the pleadings, including the answer. See Aponte-Torres, 445 F.3d at 54-55. Those assertions in the answer that have not been denied and do not conflict with the assertions in the complaint are taken as true. See

Santiago v. Bloise, 741 F. Supp. 2d 357, 360 (D. Mass. 2010). In addition, "[t]he court may supplement the facts contained in the pleadings by considering documents fairly incorporated therein and facts susceptible to judicial notice." R.G. Fin. Corp., 446 F.3d at 182. Still, "[l]ike Rule 12(b)(6), Rule 12(c) does not allow for any resolution of contested facts; rather, a court may enter judgment on the pleadings only if the uncontested and properly considered facts conclusively establish the movant's entitlement to a favorable judgment." Aponte-Torres, 445 F.3d at 54.

## III. Factual Background

The following summary is based on allegations in the amended complaint, D. 11, the exhibits appended by the parties, D. 58-1; D. 58-2; D. 61-1, and facts in Defendants' answers, D. 16; D. 17; D. 21, to the extent they have not been denied and do not conflict with allegations made in the amended complaint, Santiago, 741 F. Supp. 2d at 360, which are accepted as true for the purposes of resolving the present motion.

Fustolo is a mortgagor of the Property. D. 11 ¶¶ 2, 50. On or about July 19, 2023, Fustolo filed a complaint in Suffolk Superior Court against Shellpoint, id. ¶ 16, the servicer of the Property's mortgage, id. ¶ 4, and U.S. Bank, the then-holder by assignment of the Property's mortgage, id. ¶ 5, challenging their right to foreclose on the Property, id. ¶¶ 16-17. The complaint was subsequently removed to another session of this Court. Id. ¶ 16; see Fustolo v. Newrez LLC et al., No. 23-cv-11972-MJJ (D. Mass. Aug. 28, 2023), D. 1 (hereinafter, "Fustolo I"). While those parties' cross-motions for summary judgment were pending before the Fustolo I court, Shellpoint and U.S. Bank scheduled a foreclosure of the Property for August 11, 2024. D. 11 ¶¶ 18-19. In response, Fustolo filed an emergency motion for a *lis pendens*, which the Fustolo I court allowed on July 23, 2024. Id. ¶¶ 20-21; see Fustolo I, No. 23-cv-11972-MJJ (D. Mass. July 23, 2024), D. 28. Fustolo recorded the *lis pendens* in the Suffolk Registry of Deeds, D. 11 ¶ 22, and

Shellpoint and U.S. Bank subsequently postponed the foreclosure sale, id. ¶ 23. On January 6, 2025, the Fustolo I court allowed Shellpoint and U.S. Bank's motion for summary judgment and dismissed the Fustolo I action. Id. ¶ 24; see Fustolo I, No. 23-cv-11972-MJJ (D. Mass. Jan. 6, 2025), D. 36, D. 37. Fustolo timely appealed the dismissal, and the appeal remains pending before the First Circuit. D. 11 ¶ 25; see Fustolo I, No. 23-cv-11972-MJJ (D. Mass.), appeal docketed, No. 25-1118 (1st Cir. Feb. 6, 2025). On February 28, 2025, Shellpoint and U.S. Bank recorded the order of dismissal in the Suffolk Registry of Deeds. D. 11 ¶ 43.

On March 12, 2025, Fustolo received a new notice of foreclosure from Shellpoint, U.S. Bank, Landmark and Katz notifying him that a foreclosure auction for the Property was scheduled for April 22, 2025 at 12:00 p.m. (the "initial foreclosure auction"). Id. ¶ 26. On or about April 5, 2025, Fustolo transferred the Property to the Salem Street Estate Planning Trust (the "Trust"), over which Fustolo is a trustee alongside Debra Ann Chicon-Fustolo ("Chicon-Fustolo"). Id. ¶ 3. He then submitted a quitclaim deed and trustee's certificate for the Property on or about April 21, 2025. Id. Prior to the initial foreclosure auction, Fustolo told Shellpoint, U.S. Bank, Landmark and Katz that "the foreclosure was unlawful and that, among other issues, there was an active lis pendens and the existence of other defects in title." Id. ¶ 27. At 12:00 p.m. on April 22, 2025, Shellpoint, U.S. Bank, Landmark and Katz cancelled the initial foreclosure auction. Id. As alleged, Shellpoint, U.S. Bank, Landmark and Katz did not announce the new auction date to the group of bidders gathered at the initial foreclosure auction before they "dissipated." Id. That same day, Fustolo filed the present action in Suffolk Superior Court against Shellpoint and U.S. Bank challenging the foreclosure of the Property, D. 1-1 at 2, 11, which was subsequently removed to this Court, D. 1.

A new foreclosure auction date was scheduled for April 28, 2025 at 2:00 p.m. (the "foreclosure auction"). D. 11 ¶¶ 28-29. On the newly scheduled sale date, Landmark, a foreclosure auction company, id. ¶ 6, and Katz, an auctioneer for Landmark, id. ¶ 7, hosted the Property's foreclosure auction, id. ¶¶ 6-7. Fustolo attended the auction and, before it began, hand-delivered "a draft" of the amended complaint to Landmark and Katz, which listed purported title defects and the existence of the *lis pendens*. Id. ¶ 29. As alleged, Fustolo also verbally notified Landmark and Katz about the alleged "title defects and insufficient notice of foreclosure," and suggested that they had an "ethical responsibility" to notify prospective bidders of the alleged title defects. Id. Landmark and Katz moved forward with the foreclosure auction, id. ¶ 30, during which they allegedly failed to announce that the Property was purportedly subject to a *lis pendens* or to disclose the claims in Fustolo I, id. ¶ 41. Approximately six bidders attended the foreclosure auction as compared to, as alleged, "a crowd of approximately 20" at the initial foreclosure auction. Id. ¶ 33. During the auction, U.S. Bank placed an initial bid for $294,217.45, approximately $136,863.97 below the Property's outstanding mortgage balance. Id. ¶ 31. The final accepted bid was $325,000, id. ¶ 30, as alleged, $264,000 less than the Property's appraisal value, see id. ¶ 32.

## IV. Procedural History

Fustolo initiated this action in Suffolk Superior Court on April 22, 2025, D. 1-1 at 11, and Shellpoint and U.S. Bank subsequently removed the action to this Court on April 23, 2025, D. 1. Fustolo amended his complaint on June 25, 2025, adding Chase, Landmark and Katz as defendants. D. 11. Katz and Landmark then moved to dismiss on October 3, 2025, D. 28, which this Court allowed as to Count IV (Chapter 93A claim) against them, D. 63. NewRez, U.S. Bank, and Chase now have moved for judgment on the pleadings, D. 56. The Court heard argument on this motion and took the matter under advisement. D. 67.

## V. Discussion

### A. Fustolo Has Not Plausibly Alleged a Breach of Defendants' Duty of Good Faith and Reasonable Diligence (Count II)

Defendants argue that Fustolo has not plausibly alleged a breach of a mortgagee's duty of good faith and reasonable diligence based on their conduct surrounding the foreclosure sale of the Property, such that Count II fails. D. 58 at 6-11. "The law governing a mortgagee's responsibility to the mortgagor in the exercise of a power of sale is relatively straightforward. The mortgagee 'must act in good faith and must use reasonable diligence to protect the interests of the mortgagor.'" Williams v. Resol. GGF OY, 417 Mass. 377, 382-83 (1994) (quoting Seppala & Aho Constr. Co. v. Petersen, 373 Mass. 316, 320 (1977)). A mortgagee must also "obtain for the property as large a price as possible." Id. at 383 (internal quotation marks omitted) (quoting Clark v. Simmons, 150 Mass. 357, 359 (1890)). This "duty to exercise good faith and reasonable diligence is not met by 'a mere literal compliance with the terms of the power [of sale]' or with the requirements of G. L. c. 244, § 14." Prop. Acquisition Grp., LLC v. Ivester, 95 Mass. App. Ct. 170, 175 (2019) (quoting Pehoviak v. Deutsche Bank Nat'l Trust Co., 85 Mass. App. Ct. 56, 61 (2014)). Even still, "Massachusetts courts typically have not found a foreclosure sale to be invalid unless 'the bad faith or failure of diligence has been of an active and conspicuous character.'" Santander Bank, N.A. v. Baldwin Realty, LLC, No. 13-cv-13161-FDS, 2015 WL 1781741, at *7 (D. Mass. Apr. 17, 2015) (quoting Pemstein v. Stimpson, 36 Mass. App. Ct. 283, 287 (1994)); see Figueroa v. Fed. Nat. Mortg. Ass'n, No. 12-cv-11290-RWZ, 2013 WL 2244348, at *3 (D. Mass. May 20, 2013) (explaining that mortgagee fails to satisfy duty of good faith and reasonable diligence, even if they comply with statutory requirements, if their conduct "manifested fraud, bad faith, or the absence of reasonable diligence in the foreclosure sale process" (internal quotation

marks omitted) (quoting Pemstein, 36 Mass. App. Ct. at 286). "Importantly, the mortgagee's duty of good faith and reasonable diligence is focused on its conduct of the foreclosure sale." Id.

Defendants focus their challenge on Fustolo's allegations in support of Count II: (1) that Katz and Landmark continued the foreclosure sale from April 22 to April 28 without publicly announcing the new date and time; (2) that Defendants used an auction company, Landmark, not registered to do business in Massachusetts, and that Defendants used an auctioneer to conduct the auction on Landmark's behalf; (3) that Defendants conducted a foreclosure sale while a valid *lis pendens* was in place; (4) that the foreclosure sale price undervalued the Property; and (5) that Defendants failed to obtain a new order under the Servicemembers Civil Relief Act (the "SCRA") prior to proceeding with the foreclosure sale. D. 58 at 6-11; D. 11 ¶ 73(a)-(f).

*1. Continuation of Foreclosure*

Fustolo alleges that Defendants breached their duty of good faith and reasonable diligence because Katz and Landmark failed to announce the date and time of the foreclosure sale when they announced the postponement of the initial foreclosure sale to the bidders gathered at same. D. 11 ¶ 73(a); D. 61 at 8. Although approximately six bidders appeared at the foreclosure sale, Fustolo alleges that approximately twenty bidders were present at the initial foreclosure sale, D. 11 ¶ 33, and he attributes this drop in attendance to Defendants' failure to announce the new date and time at the initial foreclosure sale, D. 61 at 8-9. Even reading the complaint in the light most favorable to Fustolo, the duty of good faith and reasonable diligence does not stretch so far as Fustolo suggests.

First, the Court notes that "[u]nder Massachusetts law, the mortgagor," here, Fustolo, "has the burden of proving commercial unreasonableness." Stephens-Martin v. Bank of New York Mellon Tr. Co., No. 12-misc-465277-AHS, 2013 WL 5508415, at *12 (Mass. Land Ct. Oct. 1,

2013) (internal quotation marks omitted) (quoting Chartrand v. Newton Trust Co., 296 Mass. 317, 320 (1936)).

Second, although the duty of good faith and reasonable diligence requires that a mortgagee "provid[e] notice of the postponement [of a foreclosure sale] to any party that appears on the initially scheduled foreclosure date," "there is no hard and fast rule for noticing continuances of foreclosure sales by public auction." Stephens-Martin v. Bank of New York Mellon Tr. Co., No. 12-MISC-465277-AHS, 2015 WL 732087, at *11 (Mass. Land Ct. Feb. 20, 2015) (internal quotation marks omitted). Rather, "questions regarding notice of foreclosure proceedings [are] viewed according to the criteria set forth in our cases . . . in light of the mortgagee's general obligations of good faith, diligence, and fairness in the disposition of the mortgaged property." Fitzgerald v. First Nat'l Bank, 46 Mass. App. Ct. 98, 101 (1999) (determining that "[i]t was appropriate in this case for the bank to continue the sale by public proclamation at the time and place of the scheduled auction"). Although Fustolo argues that Fitzgerald supports his claim here, pointing to the drop in attendance between the two foreclosure sales, D. 61 at 9-10, and although he alleges that announcing the continued auction date is standard practice among auctioneers, D. 11 ¶ 38, the Court does not agree that the foreclosure sale amounted to "a secret auction," id. ¶ 39, particularly in light of the fact that, even as alleged, approximately six bidders beyond Fustolo were present at same, id. at ¶ 33; see Branch Ave Cap., LLC v. U.S. Bank Nat. Ass'n, No. 12-cv-40140-TSH, 2013 WL 5242121, at *4 (D. Mass. Sept. 16, 2013) (explaining that defendants' failure to publicly proclaim postponement was not commercially unreasonable where, *inter alia*,

petitioner was given notice of "new auction date," defendants "hired an auctioneer" and "a number of bidders attended the auction").[1]

Here, Fustolo has not plausibly alleged a violation of the mortgagee's duty of good faith and reasonable diligence, particularly where a mortgagee's obligations surrounding postponement appear to be relatively permissive under Massachusetts law, see, e.g., Malanowski v. Wells Fargo Bank N.A. Tr. Option One Mortg. Corp. Tr. 2005-1 Asset-Backed-Certificates, Series 2005-1, 654 F. Supp. 3d 25, 31 (D. Mass. 2023) (stating that "postponement of a foreclosure sale does not require renewed compliance with [notice requirements of Mass. Gen. L. c. 244,] § 14 and public proclamation . . . is a permissible way to postpone a sale, though not statutorily mandated"), aff'd, No. 24-1028, 2024 WL 5319077 (1st Cir. Oct. 15, 2024); Chaves v. U.S. Bank, N.A., 335 F. Supp. 3d 100, 110-11 (D. Mass. 2018) (explaining that, "although public proclamation is a permissible way to postpone a sale, it is not required," such that "failure to publicly proclaim a postponement does not necessarily violate a mortgagee's obligations") (emphasis in original); Stephens-Martin, 2015 WL 732087, at *11 (observing that "Fitzgerald explicitly noted that there is no statutory procedure specifically addressing the proper noticing requirement for postponement"); Hammond v. JPMC Specialty Mortg. LLC, No. 10-cv-11121-DPW, 2011 WL 1463632, at *9 (D. Mass. Apr. 15, 2011) (noting that "[f]lexibility in continuance is especially appropriate when the mortgagor herself seeks a delay of the auction").

In short, Fustolo has not met his burden of plausibly alleging that Katz and Landmark's failure to include the date and time in their postponement announcement constitutes commercially

[1] Fustolo's presence, as well as the undisputed presence of other bidders, at the foreclosure sales also distinguishes Clark v. Simmons, 150 Mass. 357, 360-61 (1890), where "no bidders [were] present at the time and place appointed for the [initial] sale, [which] was adjourned then and several times afterwards," id. at 360; see D. 61 at 4-5, 10.

unreasonable behavior, even as alleged here. In light of the foregoing, the Court allows the motion as to Fustolo's arguments regarding same under Count II, D. 11 ¶ 73(a).

*2. Not Registered to Do Business*

Defendants next argue that Fustolo cannot establish a breach of their duty of good faith and reasonable diligence on the basis that Landmark, and by extension Katz, were not registered to do business in Massachusetts. D. 58 at 7-8. Fustolo disputes that his claims depend on Landmark's registration status invalidating the sale, and clarifies that the "relevant point is that Landmark and Katz allegedly acted as [Defendants'] agents in conducting the foreclosure," such that Defendants had notice of Fustolo's "continuance, title, and marketability objections" prior to the foreclosure sale. D. 61 at 10. While Fustolo now argues that Landmark's registration status is not pivotal to his claims against Defendants, id., the Court notes that "[t]here is no statute in Massachusetts that expressly requires a foreclosing entity to have delivered a certificate to the secretary of state before such entity implements foreclosure proceedings," Bank of New York Mellon Corp. v. Wain, No. 12-MISC-459002-AHS, 2012 WL 5475849, at *4 n.3 (Mass. Land Ct. Nov. 9, 2012), aff'd on other grounds, 85 Mass. App. Ct. 498 (2014).[2]

In light of the foregoing, the Court allows the motion as to Count II insofar as same is premised on the fact that Landmark was not registered to do business in Massachusetts, D. 11 ¶ 73(b).

[2] The Court notes that Defendants have produced evidence, which Fustolo does not dispute, that Katz is a licensed auctioneer. D. 58-2 at 2 (auctioneer's certificate of Katz from the Commonwealth of Massachusetts for January 31, 2025 to March 5, 2026). The Court takes judicial notice of such public records. See Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993); Gargano v. Belmont Police Dept., 476 F. Supp. 2d 39, 41 (D. Mass. 2007).

*3. Conducting Foreclosure Sale While Lis Pendens Pending*

Defendants argue that Fustolo's claims as to the pending *lis pendens* are inapposite here because the duty of good faith and reasonable diligence focuses on Defendants' conduct at the foreclosure sale. D. 58 at 8 (citing Figueroa, 2013 WL 2244348, at *3). Fustolo responds that Defendants again "miss the point," and that he does not contend that "every asserted title . . . issue independently voids the sale," but instead urges the Court to consider Defendants' broader pattern of conduct (i.e., proceeding with sale despite awareness of, *inter alia*, title disputes). D. 61 at 10.

"A memorandum of *lis pendens* is a notice recorded in the chain of title to real property warning all persons that such property is the subject matter of litigation and that any interest acquired during the pendency of the suit is subject to its outcome." Est. of Howard v. Select Portfolio Servicing Inc., No. 24-cv-10859-AK, 2024 WL 5442370, at *3 (D. Mass. Sept. 13, 2024) (internal quotation marks omitted) (quoting RFF Fam. P'ship, LP v. Link Dev., LLC, 849 F. Supp. 2d 131, 137 (D. Mass. 2012)). In other words, it "temporarily restricts the power of a landowner to sell his or her property, by depriving the owner of the ability to convey clear title while the litigation is pending." Sakab Saudi Holding Co. v. Aljabri, 58 F.4th 585, 605 (1st Cir. 2023) (internal quotation marks and citation omitted). That said, "lis pendens does not of itself create an encumbrance upon the property," Lombardo v. Gerard, 32 Mass. App. Ct. 589, 595 (1992) (internal quotation marks omitted) (quoting In re Kodo Properties, Inc., 63 B.R. 588, 589 (Bankr. E.D.N.Y. 1986)). and "does no more than provide notice to those contemplating purchase of an interest in the property that a suit was pending that affected title to the property," id. (summarizing Debral Realty, Inc. v. DiChiara, 383 Mass. 559, 560–566 (1981)); see Nicholas McPickolus Realty Corp. v. Jamaica Plain Co-op. Bank, 16 Mass. App. Ct. 964, 964 (1983) (determining that defendant bank did not chill foreclosure sale "by announcing the existence of the plaintiffs' lis

pendens" and concluding that the sale was lawful). Here, the Court cannot conclude that existence of a *lis pendens* or a failure to dissolve same at the time of the foreclosure sale constitutes a breach of Defendants' duty of good faith and reasonable diligence.

Accordingly, to the extent that Fustolo raises a claim under Count II on the basis of the pending *lis pendens*, D. 11 ¶ 73(c), it fails.

*4. Undervaluing Property*

Defendants argue that Fustolo cannot establish a breach of the duty of good faith and reasonable diligence on the basis of either the initial bid or sale price at the foreclosure sale. D. 58 at 8-9. As alleged, although the Property had previously been appraised for as high as $598,000, U.S. Bank's initial bid was $294,217.45, and the Property ultimately sold for $325,000. D. 11 ¶¶ 30-32.

Defendants first argue that a low price, on its own, does not indicate a breach of a mortgagee's duty of good faith and reasonable diligence. D. 58 at 8 (citing RFF Family Partnership, LP v. Link Devt., LLC, 932 F. Supp. 2d 213, 226 (D. Mass. 2013)). On this point, Fustolo agrees. D. 61 at 7. Fustolo, however, disagrees with Defendants' contention that the pleaded disparity in appraisal and auction price is insufficient to support his claim, D. 58 at 9, and argues that the sale price is relevant "when joined with pleaded facts showing inadequate notice, reduced bidder participation, title uncertainty, and lack of reasonable diligence," as here. D. 61 at 7. Certainly, a "pleaded difference between the purchase price and the appraisal value" can "augment an inference of bad faith if defendants succeed in adducing evidence of improper conduct on the part of the" mortgagee, Santander Bank, N.A., 2015 WL 1781741, at *9. The Court further agrees that a foreclosing mortgagee must act "to protect the interests of the mortgagor," and that their "[a]wareness of the fair market value of the property factors into" their management

of the foreclosure action "to protect the interests of the mortgagor." Ivester, 95 Mass. App. Ct. at 176; see D. 61 at 7. To establish bad faith on the part of Defendants, however, Fustolo points to the same allegations discussed above: the alleged notice deficiencies surrounding postponement, the drop in bidder turnout between foreclosure sales, and that Defendants were on notice of title and marketability disputes prior to the foreclosure sale. D. 61 at 8. In light of the foregoing analysis, these allegations, considered either separately or in combination, do not constitute a breach of Defendants' duty of good faith and reasonable diligence, or otherwise constitute "attempts to chill the interest of potential buyers." See In re Brandao, 567 B.R. 396, 407 (Bankr. D. Mass. 2017) (collecting cases).

Accordingly, the Court allows the motion as to Count II to the extent that such claim is brought on the basis of valuation and the auction price, D. 11 ¶ 73(d).

*5. Failure to Obtain SCRA Orders*

Fustolo alleges that Defendants' failure to obtain either a renewed SCRA judgment as to Fustolo or any SCRA judgment as to Chicon-Fustolo violates their duty of good faith and reasonable diligence. Id. ¶ 73(e)-(f). Such argument fails. First, "[a]n otherwise proper foreclosure is not rendered invalid for failure to comply with the SCRA if the mortgagor is not entitled to the protection of the [SCRA]." Asfour v. Citizens Bank, N.A, No. 16-cv-11732-FDS, 2016 WL 7428224, at *4 (D. Mass. Dec. 23, 2016). The Court agrees with Defendants that, D. 58 at 10-11, even reading all allegations in the light most favorable to Fustolo, the complaint fails to allege that either Fustolo or Chicon-Fustolo are entitled to protection under the SCRA, see D. 11 ¶¶ 58-59; see also Silva v. Massachusetts, 351 F. App'x 450, 452 n.2 (1st Cir. 2009) (reasoning that, "[b]ecause there is no indication that either [petitioner] fell under the protection provided by [the SCRA], . . . failure to comply with the Massachusetts procedures implementing the [SCRA]

had no effect on the validity of the foreclosure"). Second, failure to comply with SCRA requirements does not clearly pertain to Defendants' "conduct of the foreclosure sale," the focus of this inquiry. Figueroa, 2013 WL 2244348, at *3. Accordingly, the Court allows the motion as to Count II to the extent that such claim is premised on the absence of SCRA judgments, D. 11 ¶ 73(e)-(f).

Having concluded that Fustolo's alleged bases for liability under Count II, id. ¶ 73, each fail independently, the Court further concludes that such bases fail when considered together, as well. The Court, therefore, allows the motion as to Count II.

### B. Fustolo Has Failed to Plausibly Allege the Tort of Wrongful Foreclosure (Count III)

"Massachusetts law recognizes [as a] type[] of action[] that can be brought by a mortgagor alleging that his property has been transferred in a wrongful foreclosure sale: '[a]n action of tort.'" Alpino v. JPMorgan Chase Bank, Nat. Ass'n, No. 10-cv-12040-PBS, 2011 WL 1564114, at *7 (D. Mass. Apr. 21, 2011) (quoting Cambridge Sav. Bank v. Cronin, 289 Mass. 379, 381 (1935)). This common-law tort "allows a homeowner to recover damages when a foreclosure is executed in an unfair manner," such as "where a mortgagee or its assignee executing a power of sale violates its duty 'to exercise good faith and put forth reasonable diligence.'" Ford v. Lehman Cap., No. 10-cv-40092-FDS, 2012 WL 1343977, at *7 n.8 (D. Mass. Apr. 17, 2012) (quoting Levin v. Reliance Co-op. Bank, 301 Mass. 101, 103 (1938)). Fustolo's wrongful foreclosure claim is based on Defendants' alleged breach of the duty of good faith and reasonable diligence, i.e., "that the sale itself was conducted negligently, in bad faith, and without reasonable diligence, causing concrete prejudice." D. 61 at 8. Because Fustolo has not plausibly alleged a violation of Defendants' duty of good faith and reasonable diligence under Count II, to the extent that his wrongful foreclosure claim is premised upon such violation, D. 11 ¶¶ 76-79, it fails.

Against this conclusion, Fustolo attempts to distinguish Levin, 301 Mass. at 102-03—where a plaintiff's claim for breach of the duty of good faith and reasonable diligence failed because their declaration did not adequately "aver[] damage[s]," id.—on the basis that he has alleged facts relating to damages (i.e., bidder reduction, price disparity, and loss of equity), D. 61 at 8. The Court has already determined that Fustolo has not plausibly alleged a breach of the duty of good faith and reasonable diligence on any of the grounds already discussed, including bidder reduction and price disparity.[3]

Accordingly, the Court allows the motion as to Count III.

### C. Fustolo Has Failed to Satisfy the Demand-Letter Prerequisite of Chapter 93A (Count IV)

Defendants contend that Fustolo has failed to allege that he served them with a demand letter, or otherwise explained his failure to do so, such that he is barred from bringing a Chapter 93A claim. D. 58 at 13-14. Chapter 93A is a "broad remedial statute" that is intended "to deter misconduct" and "to encourage vindicative lawsuits." See Moronta v. Nationstar Mortg., LLC, 476 Mass. 1013, 1015 (2016) (internal citations and quotation marks omitted). Under § 9(3) of same, a plaintiff must submit a "written demand for relief," or a demand letter, prior to suit. Mass. Gen. L. c. 93A, § 9(3).

Fustolo now argues that a demand letter is not required because neither Shellpoint nor U.S. Bank have a registered place of business in Massachusetts, D. 61 at 11-12, and, by way of support, attaches a web page indicating that neither Shellpoint nor U.S. Bank is registered with the

[3] On this point, Fustolo also raises "loss of equity," D. 61 at 8, citing to portions of the amended complaint that discuss the alleged price disparity, D. 11 ¶¶ 30-33, 49, 51. The Court's prior discussion of the alleged price disparity has addressed such arguments and resolves same here.

Secretary of the Commonwealth. D. 61-1 at 2-3.[4] While Fustolo is correct that § 9(3) "clearly excuses the plaintiff from serving a demand letter if the prospective respondent either lacks a place of business in Massachusetts or does not keep assets in Massachusetts," Moronta, LLC, 476 Mass. at 1015, D. 61 at 11-12, because a business can have a place of business in Massachusetts without being registered in Massachusetts, see, e.g., Diamond Grp., Inc. v. Selective Distribution Int'l, Inc., 84 Mass. App. Ct. 545, 550 n.3 (2013) (noting that, while plaintiff "was not registered as a Massachusetts corporation," it "was located in Newton, Massachusetts" and was "a Massachusetts business"), Defendants' registration status, alone, does not provide a sufficient basis to excuse the demand letter requirement under § 9(3). Accordingly, the Court agrees with Defendants, D. 58 at 13-14, that the lack of a demand letter suffices as a basis for judgment on the pleadings under Chapter 93A and, in light of this procedural defect, declines to reach the merits of Fustolo's 93A claims, cf. Rasla v. Wells, No. 23-cv-12499-DJC, 2024 WL 3952752, at *4 (D. Mass. Aug. 27, 2024) (concluding that "the absence of a demand letter is another basis for dismissal of [plaintiff's] 93A claim"), aff'd, No. 24-1998, 2026 WL 3274432, at *1 (1st Cir. May 26, 2026).

To the extent that Fustolo plans to supplement his allegations relevant to the Chapter 93A claim, D. 61 at 12, but there is no suggestion that such amendment would not be futile to the extent that he has relied upon the conduct of the foreclosure sale as discussed at length above. See D. 66 at 5-6. Moreover, as Defendants point out, id. at 6, there is no suggestion that Defendants' alleged conduct in this regard caused Fustolo harm as required for a Chapter 93A claim. Id. (citing Montanez v. 178 Street Operating Co., LLC, 95 Mass. App. Ct. 699, 702 (2019)). Accordingly, the Court allows the motion as to Count IV.

---

[4] As Fustolo requests, that the Court take judicial notice of public records related to Shellpoint and U.S. Bank's lack of registration in the Commonwealth. D. 61 at 12; see R.G. Fin. Corp., 446 F.3d at 182.

### D. Fustolo Is Not Entitled to Declaratory Relief (Counts I and V)

Defendants contend that Fustolo is not entitled to declaratory relief because his underlying substantive legal theories fail. D. 58 at 14. In light of the foregoing analysis, the Court agrees. See Asfour, 2016 WL 7428224, at *7 (dismissing claim for declaratory judgment where plaintiffs failed to establish an "infringe[ment] of their rights under any of their substantive legal theories").[5]

## VI. Conclusion

For the foregoing reasons, the Court ALLOWS the motion for judgment on the pleadings, D. 56, with prejudice as to all claims.[6]

**So Ordered.**

/s Denise J. Casper
Chief United States District Judge

[5] The Court notes that Count V is the only claim specific to Chase. D. 11 ¶¶ 85-91. At the motion hearing, counsel for Fustolo confirmed that Count V is contingent upon Counts I-IV. Because Counts I-IV fail, in the absence of further argument as to this point, see D. 61 at 13, so too does Count V.

[6] Fustolo requests that any adverse ruling here be without prejudice and that he be granted leave to amend his complaint. D. 61 at 14. Fustolo, however, has failed to show that amendment would not be futile as to the claims. Padmanabhan v. Hulka, 308 F. Supp. 3d 484, 497 (D. Mass. 2018) (declining request to amend and dismissing with prejudice where "[a]n opportunity to amend w[ould] not cure those fundamental shortcomings" with plaintiff's claims), aff'd, No. 18-1301, 2019 WL 10378226 (1st Cir. July 10, 2019). Accordingly, the Court denies such request.